```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
_____
                                    )
EBONIA ELLIOTT-LEWIS                )
                                    )
            Plaintiff,              )
                                    )       Civil Action
      v.                            )       No. 19-10379-PBS
                                    )
ABBOTT LABORATORIES,                )
                                    )
            Defendant.              )
_____)
```

## MEMORANDUM AND ORDER

May 9, 2019

Saris, C.J.

In 2014, Plaintiff Ebonia Elliott-Lewis sued her former employer, Abbott Laboratories, Inc. ("Abbott"). Her qui tam action alleged violations of the False Claims Act, 31 U.S.C. § 3729 et seq., and Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and wrongful termination in retaliation for her complaints about these purported violations. The court (Talwani, J.) dismissed the False Claims Act and Anti-Kickback Statute claims but allowed Elliott-Lewis to pursue her wrongful termination claims. Elliott-Lewis's attorney withdrew in August 2018, and she has since proceeded pro se.

On March 1, 2019, in the midst of discovery in her wrongful termination action, Elliott-Lewis filed a second pro se civil

1

action against Abbott. Dkt. No. 1. The new complaint accuses Abbott of intentional and negligent infliction of emotional distress and invasion of privacy by denying her medical leave benefits and wrongfully terminating her in 2014, intentionally misrepresenting the reason for her termination to the Commonwealth of Massachusetts to deny her unemployment benefits soon thereafter, and sending her notice of a possible data breach involving her personal information in February 2019. Id. at 4-5. Abbott moves to dismiss this complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 8.

Insofar as Elliott-Lewis's claims arise from Abbott's termination of her employment, the Court dismisses them as impermissibly duplicative. A plaintiff "should not file duplicative lawsuits in the same court." Connectu LLC v. Zuckerberg, 522 F.3d 82, 89 n.5 (1st Cir. 2008); see also Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011) ("District courts have discretion to control their dockets by dismissing duplicative cases."); Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."). A second lawsuit is impermissibly duplicative where it would be precluded by a final judgment in the first lawsuit. Katz, 655 F.3d at 1218; Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688-89 (9th

2

Cir. 2007), abrogated on other grounds by Taylor v. Sturgell, 553 U.S. 880 (2008). Courts have broad discretion in deciding how to respond to such claim-splitting. See Connectu LLC, 522 F.3d at 89 n.5. They may "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions," as well as enter a "simple dismissal of the second suit." Curtis, 226 F.3d at 138-39; accord Adams, 487 F.3d at 692.

As Elliott-Lewis readily admits in her complaint, the claims in this second lawsuit arise out of the same common nucleus of operative facts as her first lawsuit. Dkt. No. 1 at 4. After dismissal of the qui tam claims, her first lawsuit raises two claims based on her 2014 termination. The first two incidents mentioned in the new complaint are the termination itself and Abbott's alleged misrepresentation to Massachusetts about the reason for her termination. Both occurred before Elliott-Lewis filed her first lawsuit and, like the claims in that suit, require analyzing the reason for her termination. Because the new claims relating to the first two incidents arise out of the same facts as the wrongful termination claims in her first lawsuit and involve identical parties, they would be precluded by a final judgment in the first lawsuit. See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14-15 (1st Cir. 2010) (noting that claim preclusion applies if "the causes of action

3

asserted in the earlier and later suits are sufficiently identical or related," meaning they "arise out of a common nucleus of operative facts," and "the parties in the two suits are sufficiently identical or closely related." (quotation omitted)). Given that the first lawsuit has been pending for over four years, judicial economy necessitates dismissal of these new claims.

Elliott-Lewis also complains about a third incident: a notice of a possible data breach involving her personal information that Abbott sent her in February 2019. This incident occurred years after she filed her first civil action, so her claims as they relate to this incident are not duplicative of the first action. See Curtis, 226 F.3d at 140 (holding that "it was an abuse of the district court's discretion to dismiss . . . claims as duplicative" where the second complaint concerned events that occurred after the filing of the first complaint). However, Elliott-Lewis fails to state a claim upon which relief can be granted.

Elliot-Lewis alleges that Abbott committed intentional and negligent infliction of emotional distress by failing to prevent the data breach and then sending her notice of the breach. To state a claim for intentional infliction of emotional distress, Elliott-Lewis must plead "(1) that [Abbott] intended, knew, or should have known that [its] conduct would cause emotional

distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). "Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized community." Id. (cleaned up). A claim for negligent infliction of emotional distress has five elements: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm; and (5) that a reasonable person would have suffered emotional distress under the circumstances." Alicea v. Commonwealth, 993 N.E.2d 725, 730 n.9 (Mass. 2013).

Elliott-Lewis's factual allegations fail to support a plausible claim for either intentional or negligent infliction of emotional distress. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Nothing in the complaint suggests that Abbott's failure to protect her data was extreme and outrageous. The notice Abbott sent to Elliott-Lewis simply explained that there was "a data security incident . . . involving the potential loss of some of [her] personal information." Dkt. No. 1-2 at 2. Sending this notice was in no way "beyond all possible bounds of decency," nor is there any plausible claim that the data breach was caused by negligence. She suggests it was an intentional act of intimidation and retaliation but alleges no facts that make

this allegation plausible. Indeed, Abbott was required to send the notice by law. See Mass. Gen. Laws ch. 93H, § 3.

Elliott-Lewis's claim for invasion of privacy fares no better. Such a claim requires that the invasion "be both unreasonable and substantial or serious." Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006). Invasion of privacy is an intentional tort under Massachusetts law. See id. Elliott-Lewis has alleged no facts that plausibly suggest that Abbott released her personal data intentionally or that anyone unauthorized had access to it.

## ORDER

Accordingly, Abbott's motion to dismiss (Docket No. 8) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge